STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-93-722

Hay 1 3 24 FH '02 P: C-Cum-

JANET M. DAIGLE, et al.,

Plaintiffs

v.

NORTHWEST TRAILER PARK
PARTNERSHIP, et al.,

Defendants

ORDER ON MOTION
FOR SUMMARY JUDGMENT
OF DAVID J. DAIGLE, PEGGY
A. MOORE, AND IRENE
DAIGLE

DONALD L. GARBRECHT
LAW LIBRARY

MAY 8 2002

Defendants, David James Daigle (hereinafter "James"), Peggy Moore, and Irene Daigle, have filed a motion for summary judgment as to Counts I, II, V, VI, and VII of the plaintiff's complaint. Upon review of the motion, opposition, and the applicable law, the motion for summary judgment will be granted in part and denied in part.

## BACKGROUND

The plaintiff, Janet M. Daigle, brought this complaint in connection with the administration of a trust established by David D. Daigle for the benefit of the plaintiff, Janet, and another sibling, John Daigle, who is not involved in this lawsuit, and administered by co-trustees, the defendants James Daigle and Peggy A.

Moore; and the operation of the defendant Northwest Trailer Park Partnership.[1] The trust provides that during the life of Irene Daigle, widow of David D. Daigle, trust funds may be used for the care of Irene if needed, and that upon her death the trust funds are to be distributed to Janet Daigle and John Daigle.

The trailer park is a partnership that paid net monthly income to each partner in proportion to the percentage interest in the partnership. It was managed by James Daigle until 1982, by Janet Daigle from 1982 to 1992, and by James Daigle from 1992 to present. David D. Daigle borrowed from the income generated by the trust's interest and when he died on January 16, 1972, his ledgers showed a personal loan of $18,355.06 from the trust, and a loan of $9,182.06 from the trust to the corporation, David D. Daigle Farms. In her complaint Janet Daigle asserted the following claims: breach of fiduciary duty - James Daigle (Count I); breach of fiduciary duty - Peggy A. Moore (Count II); breach of fiduciary relationship (Count III); dissolution of partnership (Count IV); wrongful discharge/breach of implied covenant of good faith and fair dealing (Count V); intentional infliction of emotional distress (Count VI); and punitive damages (Count VII). The defendants, Irene, James, and Peggy, have filed this motion for summary judgment as to Counts I, II, V, VI, and VII.

## FACTS

David D. Daigle established the "Irrevocable Trust for John Daigle and Janet Mae Daigle" (hereinafter "the trust") on December 27, 1961. Defendants' Statement

---

[1] Since 1961 ownership of the trailer park has been in the following percentages: James Daigle - 25%; Peggy Moore - 25%; Irene Daigle - 22.5%; Janet Daigle - 10%; and Trust - 17.5%.

of Material Fact (DSMF) ¶ 1; Plaintiff's Opposing Statement of Material Fact (POSMF) ¶ 1. James Daigle and Peggy Moore were appointed trustees of the trust. DSMF ¶ 2; POSMF ¶ 2. James Daigle, as trustee, is obligated to exercise good faith in his position, and must not engage in willful misconduct in his financial dealings with the trust. Plaintiff's Additional Statement of Material Facts (PASMF) ¶ 3; Defendants' Response to Plaintiff's Additional Statement of Material Facts (DRPMF) ¶ 3. The trust provides that during the lifetime of Irene Daigle, the trustees may, in their discretion, distribute income and principal of the trust as needed for Irene's care, comfort maintenance, support and medical care and attention. DSMF ¶ 3; POSMF ¶ 3. The trust provides that upon the death of Irene Daigle, the remainder of the trust will be distributed to John Daigle (25/40) and Janet Daigle (15/40). A 17.5 percent interest in the trailer park was conveyed to the trust.[2] DSMF ¶ 5. David D. Daigle died January 16, 1972, and by that time had personally borrowed $ 18,355.06 from the trust, and his corporation, David D. Daigle Farms had borrowed $ 9,182.06 from the trust; there was no provision for interest to be paid on these loans.[3] DSMF ¶ 6. The loans were unpaid at the time of David D. Daigle's death. DSMF ¶ 7;

---

[2] The plaintiff is unsure that this was the sole asset transferred to the trust, because she claims that she has been denied access to the accounts of the trust. POSMF ¶ 5.

[3] The plaintiff attempts to dispute the fact that there was no provision for interest by pointing to subsequent loans made by the trust to the trailer park, which do include provisions for interest; however, the subsequent loans were not made to one of David D. Daigle's business entities while David D. Daigle was living, nor were the subsequent loans made to David D. Daigle, personally. POSMF ¶ 6; Plaintiff's Exhibit C.

3

POSMF ¶ 7. James Daigle and his wife, Eloise, are shareholders of the corporation David D. Daigle Farms, which has been inactive for many years and has no assets or liabilities. PASMF ¶ 2; DRPMF ¶ 2. The parties are in dispute as to whether they agreed, at the time of David D. Daigle's death, that the outstanding loans would be paid by Irene Daigle's estate at the time of her death.[4] DSMF ¶ 8; POSMF ¶ 8; see Exhibit C3 to James Daigle Aff. The loans made by the trust to David Daigle, personally, and David D. Daigle Farms have been repaid by Irene Daigle. DRPMF ¶ 3.

Peggy Moore, as trustee since 1982, has had primary responsibility for the management of the trust and has rendered personal and financial services to beneficiary Irene Daigle.[5] DSMF ¶ 14. Peggy Moore, with the approval of Irene Daigle, charged an average of $ 1949.00 annually for personal and financial services rendered to the trust and beneficiary Irene Daigle from 1983 through 1992; however she charged nothing from 1983 through 1991 and then charged $ 19,490.00 for her services in 1992-93. DSMF ¶ 15; POSMF ¶ 15. The average amount of fees charged

---

[4] The document alleged to be an agreement for the forgiveness of debt does not clarify the dispute, as it makes no reference to the debt owed by David D. Daigle and David D. Daigle Farms to the trust. Exhibit C3 to James Daigle Aff.

[5] Janet Daigle asserts that she performed most (99 percent) of the financial services for the trust during the years 1982-1993. POSMF ¶ 14; Janet Daigle (10-11-01) Aff. ¶¶ 23, 24, 25, 26; Janet Daigle (12-6-93) Aff. ¶ 4; Barbara Bagley (CPA who reviewed financial records and tax returns prepared by Janet, since 1983, pertaining to Northwest Trailer Park) Aff. ¶¶ 10, 12.

by Peggy Moore is less than a bank in the locality would charge to oversee the trust.[6] DSMF ¶ 16. The corpus of the trust increased from $ 241,140.00 in 1982 to $ 451,037.00 in 1994. DSMF ¶ 17; POSMF ¶ 17.

On May 27, 1993, Peggy Moore withdrew, or caused to be withdrawn, $20,000.00 from the trust account 060-50-178-0, and invested the money in a trust CD along with other trust funds. DSMF ¶ 18; POSMF ¶ 18.

Janet Daigle was employed as manager by Northwest Trailer Partnership as an at-will employee. DSMF ¶ 19; Peggy Moore Aff. ¶ 14; Janet Daigle Dep. pp. 64, 69, 72 (no written contract); POSMF ¶ 19. In December 1992, the other partners removed her as manager because of her difficult and abusive behavior and hostility in all matters including the operation of the trailer park.[7] DSMF ¶ 20; James Daigle Aff. ¶¶ 10, 11, 12, 13; Peggy Moore Aff. ¶¶ 16, 17, 18; Irene Daigle Dep. pp. 24, 25, 32, 33, 62, 63. After her removal as manager, Janet Daigle continued to receive her distribution from Northwest Trailer Park and received $ 14,270.00 in 1993, an increase of about $ 470.00 from the previous year. DSMF ¶ 21; James Daigle Aff. ¶

---

[6] Janet Daigle asserts that the comparison is unpersuasive as the services provided by Peggy Moore and those that would have been provided by a bank are not comparable. POSMF ¶ 16; Janet Daigle (10-11-01) Aff. ¶ 28; Janet Daigle (12-6-93) Aff. ¶¶ 5-6; Bagley Aff. ¶¶ 10, 11, 13.

[7] Janet Daigle asserts that she was terminated because she requested a raise. She cites her own affidavit as the supporting reference; however, the cited paragraph indicates the statement is made on "belief". POSMF ¶ 20; Janet Daigle (10-11-01) Aff. ¶ 9. The paragraph at issue is not about information for which Janet Daigle's personal knowledge can be inferred. See Casco Northern Bank, N.A. v. Estate of Grosse, 657 A.2d 778, 781 (Me. 1995) (although the affidavit failed to state that it was made on personal knowledge, the affiant's personal knowledge was apparent from the body of the affidavit).

14; Exhibit E; Peggy Moore Aff. ¶ 19; POSMF ¶ 21.

Janet Daigle was temporarily denied access to the trailer park financial information in 1993 in an effort to make her deliver trailer park records to the other partners.[8] DSMF ¶ 22; James Daigle Aff. ¶¶ 14, 15.

The defendants assert as a factual matter that any emotional distress suffered by Janet Daigle "was not so severe that no reasonable person could be expected to endure it." DSMF ¶ 26. The supporting citation is to testimony of Janet Daigle related to her physician's opinion that Janet was suffering stress that was severely aggravated by the lawsuit and deposition, and that her injuries were worsened by the situation. Janet Daigle Dep. pp. 6-9.

Janet Daigle asserts that Peggy Moore and James Daigle attempted to obtain a Protection From Harassment Order that would keep Janet from crossing over into Canada to get to her camp. Janet Daigle cites her own affidavit to support this assertion, however without more the court cannot accept that she has personal knowledge of Peggy Moore's motivation, especially in light of Peggy Moore's testimony as to her own motivation.[9] Supplemental Peggy Moore Aff. ¶ 5. There is no evidence that James Daigle participated in obtaining the order. See

---

[8] Janet Daigle asserts that the records and information were withheld from her because she asked for an accounting of the trust management; however, she cites her own affidavit for support, and the cited paragraph indicates that the statement is made on "belief." Janet Daigle (10-11-01) Aff. ¶ 9. The paragraph at issue is not about information for which Janet Daigle's personal knowledge can be inferred. See Casco Northern Bank, 657 A.2d at 781.

[9] Janet Daigle does include the factual statement that the order was dissolved. PASMF ¶ 4. However, that fact is insufficient to support her allegation of motive.

6

Supplemental Peggy Moore Aff. ¶ 5; Supplemental James Daigle Aff. ¶ 2; Janet Daigle (10-11-01) Aff. ¶ 13. There is a dispute as to whether Janet Daigle was stopped from crossing over the border into Canada because of the protection order or because the border authorities discovered a weapon (billy club) in Janet's car. See Janet Daigle (10-11-01) Dep. ¶ 13; but see Supplemental Kenneth Michaud Aff. ¶ 2.

## DISCUSSION

Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M. R. Civ. P. 56(c); Saucier v. State Tax Assessor, 2000 ME 8, ¶ 4, 745 A.2d 972, 974. "A genuine issue of material fact is present only when 'there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial.'" Francis v. Stinson, 2000 ME 173, ¶ 37, 760 A.2d 209, 217 (quoting Prescott v. State Tax Assessor, 1998 ME 250, ¶ 5, 721 A.2d 169, 171-72).

In order to survive a defendant's motion for summary judgment, a plaintiff must establish a prima facie case for each element for each of her causes of action. Curtis v. Porter, 2001 ME 158, ¶ 8, 784 A.2d 18, 22; see also Stanton v. Univ. of Maine System, 2001 ME 96, ¶ 6, 773 A.2d 1045, 1048-49 ("To survive a defendant's motion for summary judgment, a plaintiff must produce evidence that, if produced at trial, would be sufficient to resist a motion for judgment as a matter of law") (citation omitted). The court is charged with "determin[ing] the elements of the causes of

action at issue and then review[ing] the facts set forth in the parties' statements of material facts that are supported by appropriate record references." Id.

I.     Breach of Fiduciary Duty - James Daigle

A trustee who breaches his or her fiduciary duty is "(a) accountable for any profit accruing to the trust through the breach of trust; or (b) chargeable with the amount required to restore the values of the trust estate and trust distributions to what they would have been if the trust has been properly administered." Estate of Wilde, 1998 ME 55, ¶ 8, 708 A.2d 273, 276 (quoting Restatement (Third) of Trusts § 205 (1992)).   A breach of trust is a breach by the trustee of a duty owed to the beneficiary. Id.  Under 18-A M.R.S.A. § 7-302, a trustee "who invests and manages trust assets owes a duty to the beneficiaries of the trust to comply with the prudent investor rule set forth in this section."   However, "[t]he prudent investor rule may be expanded, restricted, eliminated or otherwise altered by the provisions of a trust." 18-A M.R.S.A. § 7-302(a).[10]

---

[10] Under 18-A M.R.S.A. § 7-302:

(b) A trustee shall apply the following requirements in complying with the prudent investor rule.

(1) A trustee shall invest and manage trust assets, as a prudent investor would, by considering the purposes, terms, distribution requirements and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill and caution.

(2) A trustee's investment and management decisions respecting individual assets must be evaluated not in isolation but in the context of the trust portfolio as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to the trust.

(3) Among circumstances that a trustee shall consider in investing and managing trust assets are all of the following that are relevant to the trust or its beneficiaries:

The plaintiff asserts that James Daigle breached his fiduciary duty as trustee by his failure, as a director and shareholder of David D. Daigle Farms, to repay or cause to be repaid the loans made to David D. Daigle Farms; and by his failure, as trustee, to exert effort to compel David D. Daigle Farms and the David D. Daigle estate to repay the loans. This argument is moot as to the principal amount due on the loans now that Irene Daigle has paid the principal amount. However, the terms of the loans are still at issue - i.e., whether James Daigle breached his fiduciary duty by failing to charge and collect interest on the loans during the course of the 32 year loan period. The plaintiff also asserts that James Daigle has breached his fiduciary duty by failing to inform and render accurate accounts with respect to the administration of the trust.

---

. . .

(v) The expected total return from income and the appreciation of capital;

(vi) Other resources of the beneficiaries, to the extent the other resources are known to the trustee;

(vii) Needs for liquidity, regularity of income and preservation or appreciation of capital; and

. . .

(e) A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries.

. . .

(g) In investing and managing trust assets, a trustee may only incur costs that are appropriate and reasonable in relation to the assets, the purposes of the trust and the skills of the trustee.

(h) Compliance with the prudent investor rule is determined in light of the facts and circumstances existing at the time of a trustee's decision or action and not by hindsight.

The defendants argue that they are entitled to summary judgment on this claim for two reasons: (1) the challenged conduct is not a breach of the fiduciary duty because under the terms of the trust, the trustees are authorized to make loans to the grantors' executors or administrators on terms as they deem advisable, and are relieved of liability for involuntary losses or damage except that caused by willful misconduct; and (2) all parties, including Janet, agreed at the time David D. Daigle's estate was settled to waive claims for the loans with the understanding that Irene would make a specific bequest in her will to provide funds to "settle the account with the trust."

A.    Failure to Charge and Collect Interest

1.    Challenged Conduct is not a Breach of Fiduciary Duty

The defendants do not direct their arguments toward the failure to charge interest, except to indicate that under the terms of the trust the trustees are empowered to make loans "on such terms as the trustee deemed advisable," as "if they were the absolute owners thereof, free of Trusts." Defendants' Motion for Summary Judgment p. 5.

The trust document does provide that the trustees have the same powers of management, disposition and control of the trust which they would have if they were the absolute owners (subject only to the liability to account therefor). Exhibit A to Peggy Moore's Aff. p. 3. The grant of authority, however, does not purport to relieve the trustees from their fiduciary duty to the beneficiaries of the trust. Even if the defendants' argument is accepted, and the trustees can only be held liable for

10

willful misconduct, there is a question of fact as to whether James Daigle's conduct rises to that level. Specifically, a reasonable trier of fact could conclude that James Daigle's decision not to repay a loan made to a corporation for which he and his wife are shareholders, and the decision to refrain from charging or collecting interest on that same loan constitute willful misconduct. In addition, the second loan was made to David D. Daigle. When David D. Daigle died, rather than repay the accounts by taking money out of the estate to repay the trust, the trustees arranged to delay payment until Irene Daigle died. There is an issue of fact as to whether the decision not to repay the accounts at that time, and the decision to refrain from charging or collecting interest on that loan was willful misconduct, because it is unclear who benefitted from maintaining the outstanding loan, and deciding not to charge or collect interest.

2. Waiver

"Waiver is the voluntary and knowing relinquishment of a right and may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon." Dep't of Human Serv. v. Bell, 1998 ME 123, ¶ 6, 711 A.2d 1292, 1294-95. Waiver is an affirmative defense, and as such the defendants bear the burden of proof in this motion for summary judgment. See Townsend v. Chute Chemical Co., 1997 ME 46, ¶ 9, 691 A.2d 199, 202; see also Associated Builders, Inc. v. Coggins, 1999 ME 12, ¶ 2, 722 A.2d 1278, 1279.

James Daigle asserts that Janet Daigle may not complain of his failure to

11

charge or collect interest, even if the failure to do so constitutes a breach of fiduciary duty, because she waived the issue. The evidence cited by the defendants as supporting the existence of a waiver is not conclusive: the purported waiver (Exhibit C3 to Peggy Moore Aff.) makes no reference to money owed by David D. Daigle Farms or David D. Daigle to the trust; the letter from C.P.A. Earl C. Carson (Exhibit C1 to Peggy Moore Aff.) merely references his understanding that an agreement has been reached; and the letter from attorney Robert L. Jalbert (Exhibit C4 to Peggy Moore Aff.) references an agreement that the amount owed by David D. Daigle and his various business associations would be forgiven. However, in 1990 Irene Daigle wrote a letter in which she asserted that she would make a specific bequest to the trust in her will. DSMF ¶ 11. Therefore, a reasonable fact finder could determine that there was no agreement to waive debts owed by David D. Daigle and David D. Daigle Farms at the time of David D. Daigle's death. See, e.g., Curtis v. Porter, 2001 ME 158, ¶ 9, 784 A.2d 18, 22 ("Although [the court] will not speculate, [it] accord[s] the nonmoving party the full benefit of all favorable inferences that may be drawn from the facts presented") (citation and quotation omitted). The defendants have not established that there are no genuine issues of fact as to their affirmative defense of waiver.

B.    Failure to Inform and Render Accurate Accounts

The defendants do not challenge this claim in their motion for summary judgment. Furthermore, the defendants admit that they withheld information from Janet Daigle in order to coerce her into turning over trailer park records to the

12

other partners. DSMF ¶ 22. The defendants have not established that they are entitled to judgment as a matter of law on this claim.

II.     Breach of Fiduciary Duty - Peggy A. Moore

Janet Daigle asserts that Peggy Moore has breached her fiduciary duty by taking excessive and unreasonable trustee fees, and by withdrawing $ 20,000 from the trust account on May 27, 1993. Specifically, the plaintiff asserts that Peggy Moore has taken fees in the amount of $19,489.41 since November 29, 1991; purportedly these fees are retroactive for services provided by Peggy Moore over the previous ten years (1983-1992). The defendants argue that they are entitled to summary judgment on this claim because the fees taken were not unreasonable or excessive, on average. The defendants assert that the terms of the trust (Article IV, § 7) establish that the trustees have broad discretion in paying compensation for services provided to the trust, and that the trustee's duties include providing personal services and attention needed to assure Irene Daigle's continued standard of living as well as financial management of her affairs (Article II). The fees charged were 0.6 percent of the total value of the trust beginning in 1983, but payment did not begin until 1991.

Whether a duty has been breached is generally a question of fact. See, e.g., Stanton v. Univ. of Maine System, 2001 ME 96, ¶ 11, 773 A.2d 1045, 1050. Here, there is a genuine issue of fact as to whether the fees taken by Peggy Moore were unreasonable and excessive. That is, because Peggy Moore did not take any trustee fees for ten years, a reasonable trier of fact could conclude that there was an

agreement established by a course of dealing to waive trustee fees.  In addition, there is a question of fact as to the reasonableness of the trustee fees as related to the duties performed by Peggy Moore.  POSMF ¶ 14.

The breach of fiduciary duty claim against Peggy Moore also contains an allegation that she improperly withdrew $ 20,000 from the trust.  The funds never left the trust, but were reinvested in a certificate of deposit.  DSMF ¶ 18; POSMF ¶ 18. Accordingly, Peggy Moore did not breach her fiduciary duty by withdrawing $20,000 from the trust.

III.    Wrongful Discharge/Breach of Implied Covenant of Good Faith and Fair Dealing

A.    Breach of Employment Agreement

In general, an employment contract of indefinite duration may be terminated at will by either party.  Bard v. Bath Iron Works Corp., 590 A.2d 152, 155 (Me. 1991). Parties to an employment contract of indefinite duration may enter an employment contract terminable only pursuant to its express terms.  Id.  "Such a contract must expressly restrict the employer's common law right to discharge the employee at will and clearly limit the employer to the enumerated method or methods of terminating the employment."  Id. (citing Libby v. Calais Regional Hosp., 554 A.2d 1181, 1183 (Me. 1989)).  Implied language, whether written or oral, will not be sufficient to abrogate or limit the employer's common law right.  Bard, 590 A.2d at 155 (citing Libby, 554 A.2d at 1183); see also Barrera v. Town of Brownville, 139 F. Supp. 2d 136, 141 (D. Me. 2001) (employee handbook can constitute such an

14

employment contract where the terms explicitly provide that removal or termination must be grounded in good cause).

This count of the complaint arises out of the removal of Janet Daigle as the managing partner of the trailer park. Janet Daigle asserts that she was removed without just cause in violation of an express or implied contract of employment. This claim, although entitled "wrongful discharge" is, in actuality, a claim for a breach of an employment agreement. The defendants argue that Janet Daigle was an at-will employee with no written employment contract.

The plaintiff did not direct any arguments in her opposition to the motion for summary judgment to her claim of wrongful discharge. In addition, Janet Daigle admitted that she was an at-will employee of the trailer park. DSMF ¶ 19; POSMF ¶ 19. Janet Daigle has not pointed out any written agreement, or provided the court with evidence of any oral agreement, that would abrogate or qualify the employer's right to terminate Janet Daigle's employment. Accordingly, the defendants are entitled to summary judgment as to the claim of wrongful discharge. See Curtis, 2001 ME 158, ¶ 8, 784 A.2d at 22 (in order to survive a defendant's motion for summary judgment a plaintiff must establish a prima facie case for each element of her cause of action).

B.    Implied Covenant of Good Faith and Fair Dealing

Maine has "consistently refused to recognize implied promises in employment contracts of indefinite duration." Bard, 590 A.2d at 156; see also Scott v. John T. Cyr & Sons, 660 A.2d 918 (Me. 1995). The plaintiff has not provided any

15

evidence or argument to persuade the court to vary from this general principle. Accordingly, the defendants are entitled to summary judgment as to this claim. See Curtis, 2001 ME 158, ¶ 8, 784 A.2d at 22.

IV.    Intentional Infliction of Emotional Distress

The Law Court has written that:

> To withstand a defendant's motion for summary judgment on a claim of intentional infliction of emotional distress, a plaintiff must present facts in support of each of the following four elements:
>> (1)   the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct;
>> (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community";
>> (3) the actions of the defendant caused the plaintiff's emotional distress; and
>> (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable person could be expected to endure it."

Curtis, 2001 ME 158, ¶ 10, 784 A.2d at 22-23 (quoting Champagne v. Mid-Maine Med. Ctr., 1998 ME 87, ¶ 15, 711 A.2d 842, 847).

This count of the plaintiff's complaint is based on assertions that the defendants, James Daigle, Peggy Moore, and Irene Daigle, excluded the plaintiff from partnership business intentionally causing her emotional distress. The defendants assert that they are entitled to summary judgment on this count for the following reasons: (1) the removal of Janet Daigle as managing partner was not an extreme or outrageous act; (2) the circumstances of Janet Daigle's removal do not meet the applicable standard for severe emotional distress - where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress

16

engendered by the circumstances of the event; (3) the plaintiff has presented no evidence of severe mental distress; and (4) Maine cases have consistently held that an employer's refusal to rehire, even though antagonistic to free speech, is not intolerable conduct to support an intentional infliction of emotional distress claim.

The plaintiff did not direct any arguments, in her memorandum in opposition to the motion for summary judgment, to the intentional infliction of emotional distress count of her complaint. However, in her statement of material fact the plaintiff asserts that the Peggy Moore's and James Daigle's actions in removing Janet Daigle from her job, withholding partnership asset and income information, attempting to cut off contact between Janet Daigle and her mother (Irene Daigle), and attempting to obtain a harassment order from Maine District Court were extreme and outrageous acts. POSMF ¶¶ 23, 24; see Stanton, 2001 ME 96, ¶ 6, 773 A.2d at 1048-49 (in evaluating a motion for summary judgment the court is to look to the statements of material fact to determine whether the plaintiff has made out a prima facie case for all of the elements of the cause of action). In response to the assertion that Janet Daigle has not established emotional distress, she only replies that the conduct of the defendants was extreme and outrageous and "was initiated and carried out to attack her financially, assault her spiritually, ostracize her from her family and restrict[] her rights and ability to travel freely to her camp." POSMF ¶ 26. The court concludes that Janet Daigle has not provided evidence to support the emotional distress element of her intentional infliction of emotional distress claim against the defendants. Accordingly, the defendants are

17

entitled to summary judgment as to the plaintiff's claim for intentional infliction of emotional distress. See Curtis, 2001 ME 158, ¶ 8, 784 A.2d at 22 (a plaintiff must establish a prima facie case for each element of her cause of action).

V.    Punitive Damages

Punitive damages are available if a plaintiff establishes "by clear and convincing evidence that the defendant's conduct was motivated by actual ill will or was so outrageous that malice is implied." Fine Line, Inc. v. Blake, 677 A.2d 1061, 1065 (Me. 1996); see also Waxler v. Waxler, 1997 ME 190, ¶ 16, 699 A.2d 1161, 1165 (evaluation of punitive damages claim in the context of breach of fiduciary duty).

The defendants assert that they are entitled to summary judgment as to the plaintiff's claim for punitive damages because the defendants' conduct with regard to removing the plaintiff from the managing partner position was nothing more than their rightful discretion as partners. The defendants assert that their election to terminate an unresponsive, demanding and abusive manager does not demonstrate malice to any degree.

The plaintiff's claim for punitive damages encompasses every claim she asserts against the defendants. The breach of fiduciary duty claims survive this motion for summary judgment. There is a question of fact as to whether James Daigle and Peggy Moore, in breaching their fiduciary duties as trustees, engaged in conduct so outrageous that malice can be implied.

The entry is

The defendants' motion for summary judgment as to Count I (breach of fiduciary duty - David James Daigle) is DENIED;

The defendants' motion for summary judgment as to Count II (breach of fiduciary duty - Peggy Moore) is GRANTED as to the claim of improperly withdrawing $20,000, and is DENIED as to the claim of excessive fees;

The defendants' motion for summary judgment as to Count V (wrongful discharge/breach of implied covenant of good faith and fair dealing) and Count VI (intentional infliction of emotional distress) is GRANTED; and

The defendants' motion for summary judgment as to Count VII (punitive damages) is GRANTED as to the underlying claims of wrongful discharge (Count V) and intentional infliction of emotional distress (Count VI), and is DENIED as to the remainder of the underlying claims.

Dated at Portland, Maine this 30th day of April 2002.

Robert E. Crowley
Justice, Superior Court

19

Date Filed __07-02-93__ ____Cumberland____ Docket No. ___CV93-722___
County

Action ___Damages___

JANET M. DAIGLE
THE JOHN DAIGLE AND JANET M.
IRREVOCABLE TRUST

NORTHWEST TRAILER PARK PARTNERSH
DAVID J. DAIGLE
PEGGY A. MOORE
IRENE DAIGLE

vs.

| Plaintiff's Attorney | Defendant's Attorney (Daigles/Moore) |
|---|---|
| ANDREW J. DOUKAS, ESQ.<br>P.O. BOX 4185<br>PORTLAND, ME 04101<br>871-7232<br><br>~~David J. Perkins, Esq.~~ W/D<br>P.O. Box 449<br>Portland, Maine 04112 | William Smith, Esq. 868-5248<br>55 Main Street, Van Buren, ME 04785 |

| Date of Entry | |
|---|---|
| 1993<br>July 02 | Received 07-02-93.<br>Complaint with Exhibits A thru Z and AA thru PP filed. |
| "    " | (4) Summonses filed.<br>Defendant, Irene Daigle served 06-24-93 in hand.<br>Defendant, Peggy Moore served 06-24-93 in hand,<br>Defendant, David Daigle served 06-24-93 to Eloise Daigle, Wife.<br>Defendant, Northwest Trailer Park Partnership served 06-24-93 to Peggy Moore. |
| "    " | Plaintiff's Emergency Motion for Appointment of Receiver Pendente Lite and Protection of Witness filed. |
| "    " | Plaintiff's Memorandum of Law in Support of Emergency Motion for Pendente Appointment of Receiver Pendente Lite filed. |
| "    " | Affidavit of Janet M. Daigle with Exhibits A thru Z and AA thru ZZ and AAA thru KKK filed. |
| July 20 | Received 07/16/93:<br>Defendants David J. Daigle, Peggy A. Moore, Irene Daigle and Northwest Trailer Park Partnership's Answer filed. |
| "    " | Defendant's Objection and Memorandum in Opposition to Plaintiff's Motion for Appointment of Receiver Pendente Lite and Protection of Witnesses filed. |
| "    " | Defendant's David J. Daigle, Peggy Moore and Irene Daigle's Motion for Extension of Time to File Answer to Complaint filed. |
| July 21 | On 7-20-93.<br>As to Defendnts, David J. Daigle, Peggy Moore, and Irene Daigle's, Motion for Extension of Time to File Answer to Complaint, Motion Granted. (Saufley, J.)<br>7-22-93 copy mailed to William Smith and Andrew Doukas, Esqs. |